IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEVAN G.,[1]

                Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 6:24-cv-00660-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

      Devan G. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security

Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), and the parties

have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the

reasons that follow, the Court reverses the ALJ's decision and remands for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is so because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in December 1992, making her twenty-three years old on December 20, 2016, the alleged disability onset date. (Tr. 69.) In her applications, Plaintiff alleges disability due to major depression disorder, major anxiety disorder, autism spectrum disorder, and cyclical vomiting disorder. (*Id.*)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on March 7, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 82, 91-92, 102-03, 139.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ on June 8, 2023. (*Id.* at 36-61.) On August 3, 2023, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 15-30.) On February 21, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

### II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 15-30.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 20, 2016. (*Id.* at 17.) At step two, the ALJ found that Plaintiff suffers from the following severe, medically determinable impairments: cyclical vomiting, anxiety, autism, and depression. (*Id.* at 18.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 18-19.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to these limitations: (1) Plaintiff can understand, remember, and carry out simple routine tasks and maintain concentration, persistence, and pace for two-hour periods, (2) Plaintiff can tolerate occasional interactions with coworkers but should perform no teamwork, (3) Plaintiff should perform no hourly quotas or

assembly line work, and (4) Plaintiff can tolerate stresses and pressures of a routine, predictable work setting with occasional changes that are demonstrated prior to introduction. (*Id.* at 19-20.)

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a customer service representative or customer service cashier. (*Id.* at 28.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, such as janitor/cleaner, laborer (stores), and bench assembler. (*Id.* at 28-29.)

## DISCUSSION

Plaintiff argues that the ALJ (1) failed adequately to discuss Plaintiff's symptom testimony by creating an RFC before considering her testimony, (2) failed to provide specific, clear, and convincing reasons to reject her subjective symptom testimony, (3) improperly rejected the medical opinions of Mindy Navarro, LPC ("Navarro"), and Georgia Wilcox, Psy.D. ("Dr. Wilcox"), (4) failed properly to address the lay witness testimony, and (5) failed to account for all of Plaintiff's limitations at step five. (Pl.'s Opening Br. ("Pl.'s Br.") at 2-3, ECF No. 13.)

## I.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that the ALJ erred by discounting her subjective symptom testimony. (Pl.'s Br. at 3-9.) For the reasons discussed below, the Court agrees.

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the

claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 20, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ did not satisfy that standard here.

### 1.    Boilerplate Language

Plaintiff argues that the ALJ improperly used boilerplate language in the decision that resulted in an erroneous evaluation of Plaintiff's symptom testimony. (Pl.'s Br. at 3-9, citing *Laborin v. Berryhill*, 867 F.3d 1151 (9th Cir. 2017).)

In *Laborin*, the Ninth Circuit held that the ALJ rejected the claimant's subjective symptom testimony by "[putting] the cart before the horse." 867 F.3d at 1154. Specifically, the ALJ crafted an RFC and then rejected any portions of the plaintiff's testimony that did not align with the RFC, rather than taking the testimony into account to assess the RFC. *See id.* ("Because the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC.").

///

PAGE 6 – OPINION AND ORDER

Here, the ALJ used similar language, finding that "the claimant's statements about the intensity, persistence, and limiting effects of her symptoms [] are inconsistent because the objective medical evidence does not show clinical findings to support greater limitations than set out in the residual functional capacity." (Tr. 20.) However, this boilerplate language "is not, by itself, reversible error and can be harmless." *Laborin*, 867 F.3d at 1154. Whether or not the ALJ leads the analysis with the above boilerplate, the ALJ must still provide specific, clear, and convincing reasons for discounting a plaintiff's testimony. Accordingly, the Court finds that standing alone, the ALJ's use of boilerplate language here was not reversible error, and turns to the ALJ's evaluation of Plaintiff's symptom testimony.

### 2.    Plaintiff's Physical Health Symptom Testimony

An ALJ may discount a claimant's testimony based on evidence that her symptoms improved with treatment or were well controlled with medication. *See Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020) ("The ALJ offered specific, clear and convincing reasons for finding [the claimant's] testimony not to be credible, including . . . record evidence that her kidney disease had improved, record evidence that her hypertension was under control, and record evidence that [the claimant's] depression is 'well controlled (when on medication regularly).'" (citing *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014))); *see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023) (holding that treatment efficacy and longitudinal improvement were clear and convincing reasons to discount a claimant's testimony); *Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (holding that the claimant's improved pain following treatment and medication was a valid reason to discount the claimant's testimony); *Torres v. Saul*, 798 F. App'x 979, 981 (9th Cir. 2019) ("The [ALJ] proffered specific, clear, and convincing reasons for discounting [the

claimant's] pain and limitations testimony because the record showed that [her] conditions improved with treatment and were less severe than alleged."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits.").

Plaintiff testified that she suffers from cyclical vomiting. (Tr. 53.) She further testified that while the frequency of her vomiting had decreased from nearly every day to once or twice a week, these vomiting episodes include long periods of nausea wherein she must take medication or visit urgent care to receive intravenous fluids. (*Id.* at 54.) She explained that if the episodes last three or more hours, she has to go to the hospital for medical intervention, while shorter episodes can last up to an hour and do not require a hospital visit. (*Id.*) When asked which type of episodes she was experiencing once or twice a week, Plaintiff testified that the non-hospitalization episodes lasting for up to an hour were the ones she continued to experience. (*Id.* at 55.)

In discounting Plaintiff's testimony, the ALJ detailed Plaintiff's long history of hospital visits over the years demonstrating her efforts to resolve her cyclical vomiting issues. (*Id.* at 20-23.) Plaintiff had suffered from her cyclical vomiting since at least April 2019. (*Id.* at 525.) Since that time, Plaintiff had numerous visits and procedures from April 2019 to July 2021, including the administration of intravenous fluids and antiemetics, computed tomography (CT) scans, laparoscopic cholecystectomy, endoscopy, an esophagogastroduodenoscopy (EGD), stomach emptying studies, and magnetic resonance imaging (MRI). (*Id.* at 558, 698, 700, 732, 767, 787, 789, 821, 854, 881, 894-95, 1004, 1069, 1071, 1179, 1651, 1724, 1964, 1968-69, 1971.) In August 2021, Plaintiff reported some improvement, telling her provider that her vomiting

episodes were becoming irregular, with a typical frequency of more than once a month but sometimes up to four months between episodes. (*Id.* at 1956.) At a follow-up appointment in February 2022, Plaintiff reported no vomiting since November 21, 2021, when she increased the amount of amitriptyline she was taking, and she was experiencing only one or two days of nausea per week. (*Id.* at 1973.) Plaintiff's provider increased her amitriptyline again to determine if her symptoms could be further alleviated. (*Id.*) Treatment notes from July 2022 and March and November 2023 reflect that Plaintiff was no longer experiencing any gastrointestinal or vomiting symptoms. (*Id.* at 2091, 2101-02, 2110.)

Given that the record reflects that Plaintiff's cyclical vomiting and nausea symptoms improved with treatment, the ALJ did not err in discounting Plaintiff's testimony on this ground.

### 3.    Plaintiff's Mental Health Symptom Testimony

While the ALJ did not err in discounting Plaintiff's testimony regarding her cyclical vomiting and nausea, the ALJ failed to address Plaintiff's hearing testimony regarding her mental health impairments. Although the ALJ discussed Plaintiff's history of mental health treatment at length, the ALJ failed to address Plaintiff's hearing testimony regarding her mental health symptoms. (*Id.* at 23-25.)

At the hearing, Plaintiff testified that her "major issue" was interpersonal relationships with customers and supervisors. (*Id.* at 48.) She testified that she often required extra training and at least some level of accommodations, but that even with "fairly significant accommodations," she would still become overwhelmed. (*Id.*) This led to panic attacks, worsening depression, and increased levels of anxiety around communicating with others. (*Id.*) Plaintiff also required long periods of time to recover when her anxiety spiked. (*Id.* at 49.) She found it especially troubling to receive criticism, as she was unable to separate criticism about

her work from personal critiques, which increased her depression and anxiety to the point where

she would become "kind of" hysterical and her limbs would shake, she would develop a stutter,

and cry. (*Id.* at 49-50.) Plaintiff explained that receiving even minor criticism often required an

hour or two to recover, but major criticism could result in a hospital visit because she was unable

to cope with the increased anxiety without medication.[2] (*Id.* at 50-51.)

Although the ALJ discussed Plaintiff's mental health treatment history, the ALJ did not

meaningfully address Plaintiff's hearing testimony about how her mental health limitations had

precluded her from sustaining employment in the past even with accommodations.[3] The ALJ is

required to "identify the testimony [he] found not credible" and "link that testimony to the

particular parts of the record supporting [his] non-credibility determination," *Brown-Hunter*, 806

F.3d at 494, but the ALJ failed to do so here. *See Scott A. v. Comm'r Soc. Sec. Admin.*, No. 6:21-

cv-01676-AR, 2023 WL 3816476, at *4 (D. Or. June 5, 2023) (finding that the ALJ erred by

"fail[ing] to address certain aspects of [the plaintiff's anxiety-related] symptom testimony at the

hearing[,]" because "[a]lthough the ALJ addressed some of what plaintiff reported in his function

report, the ALJ neither mentioned anything said at his hearing" and "failed to 'specifically

identify' the parts of this testimony that she found not credible" and "[w]ithout that specific

_____

[2] Plaintiff also testified that she required constant reminders for hygiene, such as brushing her teeth, changing her clothes, and showering. (Tr. 51.) She explained that sometimes she did not shower for weeks, and that she needed reminders during depressive episodes to eat, "get some sun, and vitamin D, and things like that." (*Id.*) She testified that her anxiety had worsened in recent years, that her inconsistent treatment contributed to her increased anxiety, and that her treatment was inconsistent because of different insurance plans. (*Id.* at 51-52.)

[3] The only references in the ALJ's decision to Plaintiff's hearing testimony were a reference to Plaintiff's testimony that her anxiety was exacerbated in social situations to demonstrate that the record as a whole was "somewhat consistent" with the psychological consultants' opinions (Tr. 25), and that Plaintiff "testified similarly" to Dr. Wilcox's opinion about Plaintiff's "social anxiety and general anxiety." (*Id.* at 26.)

identification, the ALJ could not have, nor did she, 'link' such testimony to contradictory evidence in the record" which is "error under the specific, clear and convincing requirement" (citing *Brown-Hunter*, 806 F.3d at 489)).

The materiality of Plaintiff's testimony about her inability to regulate her psychological symptoms at work to the ALJ's ultimate finding that Plaintiff was not disabled "cannot be disputed" where the vocational expert acknowledged that an individual who is unable to regulate psychological symptoms throughout the workday could not sustain competitive employment (Tr. 57-58). *See Liaga v. Astrue*, No. EDCV 08-0610RNB, 2009 WL 2355762, at *2 (C.D. Cal. July 30, 2009) ("The materiality of that testimony to the ALJ's ultimate finding that plaintiff was not disabled cannot be disputed since the vocational expert acknowledged that, if an individual needed to lie down at least once during the work day for a half hour other than the lunch hour, the individual could not sustain competitive employment."); *see also Pommerville on behalf of Ragland v. Comm'r of Soc. Sec. Admin.*, No. CV 16-4104 JC, 2017 WL 1014992, at *4 (C.D. Cal. Mar. 15, 2017) (finding that the ALJ committed harmful error where "the ALJ's decision failed to address a significant portion of plaintiff's hearing testimony—specifically, plaintiff's testimony regarding the manner in which the claimant's impairments impacted her ability to work" (first citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984); and then citing *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998))).

Without the benefit of the ALJ's analysis of Plaintiff's hearing testimony about her inability to sustain past employment even with accommodations, the Court cannot determine if the ALJ considered and rejected Plaintiff's testimony "or simply ignored the evidence." *Tonia N. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1758-DWC, 2024 WL 3342500, at *2 (W.D. Wash. July 9, 2024) ("[W]ithout any written reasoning, these citations [to other parts of the ALJ's opinion] are

not sufficient for the Court to determine whether the ALJ considered and rejected Plaintiff's

[hearing] testimony . . . or simply ignored the evidence. Because the Court cannot make such a

determination, the ALJ erred."); *Scott A.*, 2023 WL 3816476, at *4 ("[P]roviding no explanation

at all leaves the court with no way to meaningfully review how the ALJ assessed these symptoms

in her decision" (citing *Brown-Hunter*, 806 F.3d at 492)). "Had the ALJ properly considered

Plaintiff's testimony" here, "the RFC may have included additional limitations." *Tonia N.* 2024

WL 3342500, at *2. Accordingly, "the ALJ's error is not harmless and requires reversal." *Id.*

## II.    MEDICAL OPINION EVIDENCE

Plaintiff argues that substantial evidence does not support the ALJ's explanation for

discounting the opinions of Plaintiff's licensed professional counselor, Mindy Navarro, LPC, and

psychological consultative examiner, Georgia Wilcox, Psy.D. (Pl.'s Br. at 11-16.) For the

reasons discussed below, the Court disagrees.

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for

evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v.

O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations

provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical

opinion."[4] *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the

---

[4] In *Cross*, the Ninth Circuit held that the revised regulations are valid under both the
Social Security Act and Administrative Procedures Act. 89 F.4th at 1216-17. Recently, "[t]he
Supreme Court . . . overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984), which 'required courts to defer to permissible agency interpretations of the
statutes those agencies administer—even when a reviewing court reads the statute differently.'"
*Williams v. O'Malley*, No. 23-35358, 2024 WL 3519774, at *1 n.1 (9th Cir. July 24, 2024)
(quoting *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2254 (2024)). In *Cross*, the Ninth
Circuit "held that the [Social Security] Act 'plainly encompasse[d] the Commissioner's authority

persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) and 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20

---

to adopt regulations to govern the weighing of medical evidence,' without deferring to the agency's interpretation of the statute." *Id.* (quoting *Cross*, 89 F.4th at 1215). Consequently, the Ninth Circuit has found that the Supreme Court's decision in "*Loper* does not undercut *Cross*." *Id.*

C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical

opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations

mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3),

(c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial

evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision,

including the decision to discredit any medical opinion, must simply be supported by substantial

evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or

treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at

*1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's

evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at

789)).

## B.    Analysis

### 1.  Mindy Navarro, LPC

The Court concludes that the ALJ did not commit harmful error in evaluating Navarro's

opinion.

Navarro provided a medical opinion on June 12, 2023. (Tr. 2148-55.) In her opinion,

Navarro stated that Plaintiff would need a job where she does not have to work with others,

would need specific direction, and "may" need extra time to complete tasks. (*Id.* at 2149.) She

further opined that Plaintiff had an extreme limitation in carrying out complex instructions and

marked limitations in her ability to understand and remember simple instructions, carry out

complex instructions, and in her ability to make judgment calls on complex work-related

decisions. (*Id.* at 2152.) Plaintiff also had marked limitations in her ability to interact

appropriately with the public, supervisors, coworkers, and with responding appropriately to

changes in the workplace. (*Id.*) Because of Plaintiff's disorganization and misunderstanding of

instructions, Navarro believed that Plaintiff would be off task for ten percent of an eight-hour

workday and that her anxiety related symptoms would cause her to miss three or four days of

work per month. (*Id.* at 2154-55.)

The ALJ found Navarro's opinion only partially persuasive. (*Id.* at 27.) The ALJ

concluded that Navarro's opinion was internally inconsistent because Navarro explained the

conditions under which Plaintiff could maintain gainful employment but also opined that

Plaintiff would be off task at least ten percent of an eight-hour workday and would need to miss

work three or four days a month, which would preclude gainful employment. (*Id.*) The ALJ also

found Navarro's opinion unpersuasive because it was inconsistent with "claimant's course of

treatment, with stability and improvement of symptoms, and the opinions of other providers."

(*Id.*)

Plaintiff argues that Navarro's opinion was not internally inconsistent, noting that

Plaintiff's inability to work in coordination with others, need for specific direction, and

allowance of extra time to complete tasks are consistent with Navarro's assessed marked and

extreme limitations. (Pl.'s Br. at 14.[5]) Plaintiff further argues that her need to miss three or four

days per month of work is consistent with "the waxing and waning nature of Plaintiff's

conditions." (*Id.*) Finally, Plaintiff argues that the ALJ's assessment of an inconsistency between

---

[5] Plaintiff also argues that her need for a "supportive supervisor" would preclude
competitive employment, referring to the vocational expert's testimony. (Pl.'s Br. at 14.)
However, Plaintiff provides no evidentiary support in the medical opinions for this restriction.

Navarro's opinion and Plaintiff's improvement with treatment is inaccurate, as only her vomiting symptoms improved but not her anxiety which "persisted and even worsened." (*Id.* at 14-15.)

The Court agrees with the ALJ that Navarro's opinion was internally inconsistent. When asked whether Plaintiff would have "excessive absences," meaning "greater than two days per month," Navarro stated that "[Plaintiff] *does* need a job where she does not have to work in coordination with others, but at the same time, she needs specific direction" and "[Plaintiff] may need extra time to complete tasks due to processing speed." (Tr. 2149.) The ALJ found those portions of Navarro's opinion to be persuasive, and incorporated the proffered limitations into Plaintiff's RFC.[6] (Tr. 27.) However, later in her opinion, Navarro opined that Plaintiff would miss three or more days per month and be off task at least ten percent of an eight-hour workday. (*Id.* at 2154.) That opinion is inconsistent with Navarro's assessed limitations that Plaintiff could maintain a regular work schedule if she did not have to work in coordination with others, received specific direction, and was provided additional time to complete tasks.

The internal inconsistencies in Navarro's opinion were a valid reason for the ALJ to discount her opinion. Accordingly, the Court finds that the ALJ did not err in partially discounting Navarro's opinion.

### 2. Georgia Wilcox, Psy.D.

The Court finds that the ALJ did not commit harmful error in evaluating Dr. Wilcox's opinion.

---

[6] Plaintiff argues that the ALJ erred at step five by failing to include Navarro's limitations that the ALJ found persuasive in the VE's hypothetical. (Pl.'s Br. at 10.) The Court disagrees. The ALJ proposed a hypothetical to the VE that expressly included the limitations Plaintiff argues the ALJ did not consider, including no teamwork, no interaction with the general public, no hourly quotas or assembly line work, and a routine, predictable work setting with occasional changes demonstrated prior to introduction. (Tr. 56.) Plaintiff has not demonstrated how these limitations are not a reasonable translation of Navarro's opinion.

Dr. Wilcox conducted a psychodiagnostic consultative examination of Plaintiff on February 18, 2022. (Tr. 1989.) According to Dr. Wilcox's opinion, Plaintiff is able to comprehend and retain information, can attend and concentrate, and is capable of following instructions. (*Id.* at 1995.) Dr. Wilcox further opined that Plaintiff could work in small groups when she is familiar with the people involved but lacks the ability spontaneously to engage with the public. (*Id.*) Finally, Dr. Wilcox believed Plaintiff could participate in the workplace but would "likely need some vocational assistance to find a job that will take her Autism Spectrum Disorder into consideration." (*Id.*)

The ALJ found Dr. Wilcox's opinion persuasive as it was consistent with other medical evidence in the record. (Tr. 26.) However, the ALJ did not consider Dr. Wilcox's opinion regarding Plaintiff's likely need for help finding a job. (*Id.*) Plaintiff argues that by not evaluating Dr. Wilcox's opinion regarding Plaintiff's need for job search assistance, the ALJ failed fully to evaluate Dr. Wilcox's medical opinion for supportability and consistency. (Pl.'s Br. at 16.) The Court disagrees.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2). Thus, Dr. Wilcox's opinion about Plaintiff's need for assistance finding a job was outside the scope of a medical opinion about a claimant's impairment-related job restrictions. In addition, the relevant regulations provide that disability must be determined "regardless of . . . whether [a claimant] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A). In any event, Dr. Wilcox's opinion that Plaintiff would likely need vocational assistance to find a job highlights her opinion that Plaintiff could participate in the workplace, which is consistent with the ALJ's ultimate nondisability

determination. (Tr. 1995.) For these reasons, the Court finds that the ALJ did not err in declining to consider Dr. Wilcox's opinion that Plaintiff is likely to require assistance to find a job.

For all of these reasons, the Court concludes that the ALJ did not commit harmful error in evaluating the medical opinion evidence.

## III.     LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by discounting the lay witness testimony provided by Plaintiff's husband, friend, and mother. (Pl.'s Br. at 17-19.) Specifically, she argues that the ALJ's statement that he "considered all of the[ lay witness] statements to the extent that they are consistent with the claimant's reports of symptoms and objective findings" does not rise to the level of a germane reason to discount lay witness testimony. (*Id.* at 18.)

### A.     Applicable Law

The new regulations "provid[e] that an ALJ is 'not required to articulate how [he] considered evidence from nonmedical sources[.]'" *Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d)); *see also* 20 C.F.R. §§ 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.").

The Ninth Circuit recently held that an "ALJ did not err in discounting the lay witness statement . . . without articulating germane reasons" because "under the revised regulations applicable to this claim, the ALJ is 'not required to articulate how [he] considered evidence from nonmedical sources.'" *Trogdon v. O'Malley*, No. 22-16461, 2024 WL 3949081, at *1 (9th Cir. Aug. 27, 2024) (quoting 20 C.F.R. § 404.1520c(d)). However, the Ninth Circuit went on to find that "even if the requirement that the ALJ provide germane reasons for discounting lay witness

testimony still applies, any error was harmless."[7] *Id.* (citations omitted); *see also Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992, at *1-2 (9th Cir. Jan. 23, 2024) (finding that "[t]he ALJ did not articulate how he evaluated the statement of a Social Security Administration employee" and noting that "an ALJ is 'not required to articulate how [she] considered evidence from nonmedical sources' under the new regulations" (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d))).

In the absence of Ninth Circuit guidance, the "majority of district courts in this circuit," including this district, have "conclude[d] that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony." *Tracy Q. v. Kijakazi*, No. 6:22-cv-00692-SI, 2024 WL 706963, at *7 (D. Or. Feb. 21, 2024) (citing, *inter alia*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023) and *Joseph L. S. v. Kijakazi*, No. 5:23-cv-00006, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023)).

Even if an ALJ fails to provide germane reasons for discounting lay witness testimony, such an error may be harmless. *See Molina*, 674 F.3d at 1114-15, 1122 ("Although the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as [the claimant's] own

---

[7] "In the recent case of *Hudnall v. Dudek*, the Ninth Circuit clarified that nonmedical sources, to include lay testimony from friends and family, are still to be considered in determining the consistency of medical opinions or prior administrative medical findings; nonetheless, the regulations expressly allow ALJs to discount nonmedical evidence without any explanation." *Donnelly v. Comm'r of Soc. Sec.*, No. 1:21-cv-01117-CDB (SS), 2025 WL 1473954, at *14 (E.D. Cal. May 22, 2025) (citing *Hudnall v. Dudek*, 130 F.4th 668 (9th Cir. 2025)). "However, the Ninth Circuit later withdrew the *Hudnall* decision." *Id.* (citing *Hudnall v. Dudek*, 133 F.4th 698 (9th Cir. 2025)); *see also Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, at *1 (9th Cir. May 13, 2025) (declining to resolve what standard applies to an ALJ's review of lay witness testimony). "As such, it appears the consideration of lay witness evidence under the revised regulations is again an open question." *Donnelly*, 2025 WL 1473954, at *14.

testimony, and the ALJ's reasons for rejecting [the claimant]'s testimony apply with equal force to the lay testimony."), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also Kennedy*, 2024 WL 242992, at *1-2 (holding that the ALJ's failure to provide germane reasons to discount lay witness testimony was harmless because it "would not alter any of the ALJ's conclusions based upon objective medical evidence").

**B.    Analysis**

Plaintiff argues that the ALJ erred by failing to identify germane reasons to discount the lay witness testimony of her husband, friend, and mother. (Pl.'s Br. at 17-19.)

The lay witnesses described examples of Plaintiff's anxiety attacks leading to self-harm; panic attacks; need for reminders to shower; varying levels of Plaintiff's ability to concentrate, remember, and understand; anxiety attacks related to stress caused by Plaintiff's interactions with supervisors; Plaintiff's "meltdowns," disorganization, and lack of consistency in taking medications; and employment-caused stressors resulting in anxiety, sleep disturbances, and depression. (*See* Tr. 296, 298, 301-02, 341-44.) In discounting the lay witness statements, the ALJ "considered all of these statements to the extent that they are consistent with the claimant's reports of symptoms and objective findings." (*Id.* at 27.)

The Court finds that the ALJ's explanation does not satisfy the requirement that an ALJ must provide germane reasons to discount lay witness testimony, and the error is not harmless where the ALJ cross-referenced Plaintiff's reports but also failed to address Plaintiff's hearing testimony. *See Gregory G. v. Comm'r, Soc. Sec. Admin.*, No. 6:24-cv-01521-JR, 2025 WL 1453277, at *6 (D. Or. May 21, 2025) ("[T]he ALJ failed to supply legally sufficient reasons for rejecting plaintiff's subjective complaints, and these same rationales do not support the decision to discount the lay witness testimony. The ALJ erred in rejecting the lay testimony in this case."

PAGE 20 – OPINION AND ORDER

(citing *Garrison*, 759 F.3d at 1020-23)); *cf. Villarruel v. Dudek*, No. 24-1233, 2025 WL 999479, at *2 (9th Cir. Apr. 3, 2025) ("'Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony,' the ALJ's failure to discuss the lay witness testimony is harmless error." (*quoting Molina*, 674 F.3d at 1117)).

For these reasons, the Court finds that the ALJ erred by failing to provide germane reasons for discounting the lay witness testimony.

## IV.    REMEDY

Plaintiff asks the Court to remand for further administrative proceedings or an immediate award of benefits. (Pl.'s Br. at 20; Pl.'s Reply Br. at 4-7, ECF No. 16.) The Commissioner argues that even if the ALJ committed reversible error, this case does not present the narrow circumstances required for an immediate payment of benefits. (Def.'s Br. at 20, ECF No. 15.) The Court finds that the credit-as-true standard is not satisfied here and that remand for further administrative proceedings is appropriate.

### A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2)

the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court has concluded that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's subjective symptom testimony regarding her mental health impairments, as well as the lay witness testimony. However, the Court finds that further proceedings would serve the useful purpose of allowing the ALJ to evaluate Plaintiff's hearing testimony and the lay witness testimony and conduct further administrative proceedings if appropriate. *See Garrison*, 759 F.3d at 1019 (finding that remand is appropriate where "additional proceedings can remedy defects in the original administrative proceeding"); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) ("Remand for further proceedings is proper because outstanding issues in the record remain that must be resolved before a determination of disability can be made."); *Kieara C. v. Comm'r, Soc. Sec. Admin.*, No. 3:23-cv-01336-YY, 2025 WL 262368, at *8 (D. Or. Jan. 22, 2025) ("Here, there are outstanding issues left to be resolved with respect to the errors discussed above. Therefore, remand for further proceedings is appropriate so that the ALJ can properly evaluate [the] medical opinion, properly consider plaintiff's subjective symptom testimony and [lay witness] statements, reformulate the RFC if necessary, seek further VE testimony at step five if necessary, or award benefits." (citing *Taylor*, 720 F. App'x at 907)). Accordingly, the Court remands this matter for further administrative proceedings.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS for further administrative proceedings.

**IT IS SO ORDERED.**

DATED this 10th day of June, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge